IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JAMES B. TWISDALE,

      Plaintiff,

v.                           Case No. 2:04-cv-00986

JOHN W. SNOW, Secretary of
the United States Department of
the Treasury,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Defendant's Motion to Dismiss (docket sheet document # 14-1), or in the alternative, Motion for Summary Judgment (# 14-2). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On September 10, 2004, Plaintiff instituted this civil action under Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII"). On December 14, 2004, Plaintiff was permitted to file an Amended Complaint, in order to include a prayer for relief. (# 12). The Amended Complaint alleges the following acts of discrimination/retaliation:

> 14.  Renee Mitchell caused a delay of 251 days in making the initial response to the Plaintiff's Grievances. Procedures allowed for 15 days. This was in violation of IRS Agency Grievance Procedures.

15.  Renee Mitchell in making the initial response to the Plaintiff, identified herself as the "Deciding Official" and not the "Appropriate Management Official." This was in violation of IRS Grievance Procedures.

16.  Renee Mitchell caused a delay of 306 days when she did not timely respond to the Grievance Examiner's Report. Procedures allowed 10 days to make the response. This was in violation of IRS Agency Grievance Procedures.

17.  Renee Mitchell delayed acting on the Plaintiff's grievances because the Plaintiff had an EEO case pending in Federal Court. This was in violation of IRS Agency Grievance Procedures.

18.  Renee Mitchell caused a total delay of 597 days as a result of her failure to follow procedural time frames as outlined in the Handbook for Agency Grievances. This was in violation of IRS Agency Grievance Procedures.

19.  Renee Mitchell accepted the Grievance Examiner's report as a means to resolve the Complaint. However, in doing so, she failed to honor or execute the recommended actions. This was in violation of IRS Agency Grievance Procedures.

20.  Renee Mitchell in the execution of her duties in resolving the Plaintiff's grievances did not promote a climate of confidence and teamwork among employees, specifically the Plaintiff and Grievance Examiner, that assured them a fair and responsive consideration of the Plaintiff's rights and concerns. This was in violation of IRS Agency Grievance Procedures.

21.  Renee Mitchell lowered the Plaintiff's evaluation form [sic; from] "Exceeds" in FY 2001 to "Met" in FY 2002.

22.  Renee Mitchell denied the Plaintiff a performance bonus in FY 2002.

(# 12 at 3-5, ¶¶ 14-22).

2

On January 28, 2005, Defendant filed the instant Motion to Dismiss (# 14-1), or in the alternative, Motion for Summary Judgment (# 14-2), asserting that Plaintiff has not exhausted his administrative remedies concerning the last four claims above and that the remainder of Plaintiff's allegations fail to make a <u>prima facie</u> case of retaliation or a hostile work environment under Title VII. After an extension of time was granted, Plaintiff filed a Response to Defendant's motions on March 24, 2005. (# 20). Defendant filed a Reply on April 8, 2005. (# 21). The matter is ripe for determination.

## FACTUAL BACKGROUND

Plaintiff has worked for the Internal Revenue Service ("IRS") for 23 years. He is presently employed as a Territory Manager for the Small Business/Self Employed Division in the Charleston, West Virginia area. In 1997, Plaintiff was the chief of the IRS's Quality Measurement Branch in Indianapolis, Indiana. While employed in that capacity, Plaintiff, a white male, participated in the investigation of an EEO complaint filed by a black female employee. (<u>See</u> <u>Twisdale v. Snow</u>, 325 F.3d 950, 951 (7th Cir. 2003)(# 14, Ex. 2). The employee subsequently filed a discrimination claim against Plaintiff, based upon his participation in her EEO proceedings. (<u>Id.</u>)

Plaintiff ultimately filed a lawsuit in the United States District Court for the Southern District of Indiana, alleging

3

claims of retaliation by his black supervisors, Mary Murphy and James Rogers, in response to his opposition to the other employee's discrimination claim. (<u>Id.</u>) The District Court granted summary judgment to the IRS in that case, and Plaintiff's subsequent appeal was unsuccessful. (<u>Id.</u>)

Following Plaintiff's transfer to his current position in West Virginia, he filed five agency grievances alleging various forms of retaliation on the basis of his prior EEO activity. (<u>See</u> Attachment A to Decl. of Robyn R. Gilliom, attached to # 14, Ex. 1). The grievances were filed on April 6, 2000, April 14, 2000, June 26, 2000, August 1, 2000, and October 22, 2000.

According to Plaintiff's Amended Complaint, a Grievance Examiner was not selected to investigate Plaintiff's grievances until sometime in September of 2001. (# 12, ¶ 55). The Grievance Examiner completed his investigation and submitted his report to the IRS on November 12, 2001. (<u>Id.</u>, ¶ 61; # 13, ¶ 61, incorporated by reference from # 8). A year later, on September 23, 2002, Renee Mitchell, Plaintiff's black supervisor, responded to the Grievance Examiner's Report concerning Plaintiff's grievances. (# 12, ¶¶ 14, 68; # 13, ¶¶ 14, 68).

On May 21, 2001, prior to the resolution of the grievance process, Plaintiff sought EEO counseling, the first step in the administrative process. (# 14, Ex. 1, Attach. B). Plaintiff claimed that, as of May 9, 2001, Defendant had retaliated against

4

him by neglecting to address or resolve his five grievances.  (Id.)
The counseling process was unsuccessful.

Thus, on July 25, 2001, Plaintiff filed a formal EEO complaint
(TD Case No. 01-3224), alleging "Retaliation/Reprisal for
Involvement in the EEO Process."  (# 14, Ex. 1, Attach. A).
Plaintiff's EEO complaint states:

> These 5 grievances are NOT the subject of this EEO
> complaint.  This complaint is about Retaliation.  The IRS
> refuses to address any of my Agency Grievances.  In other
> words, their refusal is the act of retaliation.

(Id.)  Defendant accepted Plaintiff's complaint for processing on
September 14, 2001.  (# 14, Ex. 1, Attach. C, PG 58).  However, on
October 15, 2001 and March 18, 2002, Petitioner twice requested
that his issue for investigation be amended.  (Id. at PG 57; # 14,
Ex. 1, Attach. D).  In a letter dated July 30, 2002, the agency
stated the issue for investigation as:

> Did management subject the Complainant to a harassing,
> hostile working environment based on his race
> (Caucasian), sex (Male), or in retaliation for his prior
> EEO involvement, when they allegedly failed to timely
> process his agency grievances?

(# 14, Ex. 1, Attach. D).

In a separate letter on July 30, 2002, Defendant informed
Plaintiff that the investigation of his complaint was complete.  (#
14, Ex. 1, Attach. E).  On August 19, 2002, Plaintiff submitted a
"Request for Hearing" form, requesting a hearing on the merits of
his complaint before an Administrative Judge.  (# 14, Ex. 1,
Attach. F).

Defendant thereafter filed a Motion for Summary Judgment, which Plaintiff opposed. (# 14, Ex. 1, Attach. G). On January 30, 2003, the Administrative Judge granted Defendant's Motion for Summary Judgment. (Id.)

On November 17, 2002, while the Motion for Summary Judgment was pending, Plaintiff received his annual performance evaluation and learned that Renee Mitchell, who was also the decision maker concerning his grievances, had changed his performance rating from "Exceeded" to "Met" expectations, which apparently denied Plaintiff the right to a performance bonus.

On January 3, 2003, Plaintiff again attempted to amend his EEO complaint in order to address additional claims of retaliation based upon Renee Mitchell's alleged failure to follow through on the Grievance Examiner's recommendations, and her changing of his performance rating and denial of his bonus. (# 20, Ex. 5P). At that point, however, the investigation had been concluded and the summary judgment motion was pending. Thus, on January 29, 2003, the Administrative Judge denied Plaintiff's motion to amend, stating that "the issue raised is not like or related to those raised in the instant complaint." (# 20, Ex. 6P). Therefore, the Administrative Judge did not consider Plaintiff's claim concerning the change in his performance evaluation.

On February 25, 2003, Defendant entered its Final Agency Decision ("FAD") adopting the Administrative Judge's decision. (#

6

14, Ex. 1, Attach. H).  On March 24, 2003, Plaintiff appealed the
FAD to the Office of Federal Operations (the "OFO").  The OFO
affirmed the FAD on April 2, 2004.  (# 14, Ex. 3).  Plaintiff filed
a timely request for reconsideration, which was denied on June 16,
2004.  (# 14, Ex. 4).  Plaintiff then instituted the instant civil
action.

     Defendant has admitted that Renee Mitchell was aware of
Plaintiff's EEO activity by December of 2000.  (# 13, ¶ 27).
Defendant has further admitted that Ms. Mitchell did not timely
respond to Plaintiff's grievances or the Grievance Examiner's
Report, but has denied that such action was retaliatory. (Id., ¶¶
1, 14, 16, and 18).

## STANDARD OF REVIEW

     Defendants have filed a Motion to Dismiss (# 14-1), or in the
alternative, Motion for Summary Judgment (# 14-2).  Defendant's
motion contends that some of Plaintiff's claims were not exhausted
in the administrative proceedings and, thus, the court lacks
jurisdiction over those claims.  See Davis v. North Carolina Dept.
of Correction, 48 F.3d 134, 138 (4th Cir. 1995).  The undersigned
will analyze those claims under Rule 12(b)(1), and will rely upon
documents from the administrative record.

     In challenging jurisdiction under Rule 12(b)(1) of the Federal
Rules of Civil Procedure, a motion to dismiss "may attack the
complaint on its face asserting simply that the complaint 'fails to

7

allege facts upon which subject matter jurisdiction can be based.'" GTE South Inc. v. Morrison, 957 F. Supp. 800 (E.D. Va. 1997). Additionally, "[on] a motion to dismiss for lack of jurisdiction, the Court is not constrained to consider only the allegations of the complaint, but may consider materials outside the pleadings. Such materials may be considered without converting a Rule 12(b)(1) motion to a motion for summary judgment." Kansas City Life Ins. Co. v. Citicorp Acceptance Co., 721 F. Supp. 106 (S.D. W. Va. 1989) (citations omitted).

Defendant further asserts that Plaintiff's other allegations fail to state a claim upon which relief can be granted. The undersigned will analyze those claims under Rule 12(b)(6), based upon the allegations contained in the Amended Complaint (# 12), and the responses contained in Defendant's Second Amended Answer, which incorporates by reference the responses made in the Amended Answer. (## 8, 13).

"For purposes of a motion to dismiss [filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that the Complaint fails to state a claim upon which relief can be granted], the Complaint must be construed in a light most favorable to the plaintiff and its allegations taken as true. Only when it appears that the plaintiff could prove no set of facts in support of its claim which would entitle it to relief should the motion be granted." Brock & Davis Co. v. Charleston Nat'l Bank, 443 F. Supp.

1175 (S.D. W. Va. 1977).

The undersigned proposes that the presiding District Judge **FIND** that judgment as a matter of law is premature, and that there is no need to convert Defendant's motion to one for summary judgment.  Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge treat Defendant's motion as a Motion to Dismiss (# 14-1), and **DENY** without prejudice, as premature, Defendant's Motion for Summary Judgment (# 14-2).

<u>ANALYSIS</u>

**A.   Plaintiff's unexhausted claims.**

Defendant asserts that Plaintiff has not exhausted his administrative remedies concerning his claims that Renee Mitchell failed to execute the Grievance Examiner's recommended actions, that Renee Mitchell did not "promote a climate of confidence and teamwork among employees," that Renee Mitchell lowered Plaintiff's 2002 performance evaluation, and that Renee Mitchell denied him a performance bonus in 2002.  Defendant's memorandum states:

> A Plaintiff must exhaust his administrative remedies by filing an EEO charge before he has standing to file suit under Title VII.  <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 247 (4th Cir. 2000).  As a general rule, the EEOC charge defines the scope of the Plaintiff's right to institute a civil suit.  <u>Id.</u> "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination. <u>Chisholm v. United States Postal Service</u>, 665 F.2d 482, 491 (4th Cir. 1981).

(# 15 at 6).  As stated previously, Plaintiff's revised EEOC charge characterized the issue for investigation as:

> Did management subject Plaintiff to a harassing, hostile working environment based on his race (Caucasian), sex (Male), or in retaliation for his prior EEO involvement, when they allegedly failed to timely process his agency grievances?

(# 14, Ex. 1, Attach. D).  Defendant asserts that "one could not reasonably expect the scope of the administrative investigation to include [these claims]."  (# 15 at 8-9).

Plaintiff's Response contends that his allegation that Ms. Mitchell failed to honor or execute the recommendations of the Grievance Examiner and failed to promote a climate of confidence and teamwork were exhausted through the amendment of his EEO complaint to include a hostile work environment claim.  (# 20 at 19-20).  Plaintiff further contends:

> In summary, Attachments A and B of Exhibit 1P and in Exhibit 5P, identified numerous actions on the part of Ms. Mitchell that violated Internal Revenue Manual procedures.  These actions included unexplained: delays, lack of cooperation with the Plaintiff, unauthorized designations of authority, misrepresentations of the truth and lack of cooperation with the Grievance Examiner.  It must be concluded that whenever management in any organization deliberately violates its own procedures repeatedly and extensively that a climate of confidence and teamwork cannot exist.  Rather a climate of fear, desperation, hopelessness and solitude for the Grievant exercising his/her rights is achieved.

(Id. at 23).

Defendant's Reply contends that, aside from Plaintiff's personal inferences, the EEO complaint and investigative file

contained no specific allegation that Defendant failed to promote a climate of confidence and teamwork.  (# 21 at 8).  The Reply further states that, "during the administrative process, Plaintiff did not attempt to include an allegation regarding Defendant's substantive response to the Grievance Examiner's recommended action.  Rather, he limited his allegations to the timeliness of Defendant's processing of the recommended action." (Id. at 10-11). Thus, Defendant asserts that the administrative investigation could not reasonably have been expected to include these inquiries.

Concerning his claims about Ms. Mitchell's lowering of his performance evaluation and the resultant denial of a performance bonus, Plaintiff states:

> When the Plaintiff realized that the lowering of his evaluation was the continuation of retaliation and/or harassment[,] he had two alternatives.  He could file another EEO complaint and begin the process anew or amend his current complaint with the EEOC.

> The EEO Regulations were amended in 1999 to allow administrative judges to amend a complaint to include "issues or claims like or related to those raised in the complaint." *29 C.F.R. 1614.106(d)*.  The purpose of the amendment was to promote efficiency by allowing an administrative judge to hear new issues and claims that are similar enough to the original complaint that extensive additional development of the evidence would not be required.

> The Plaintiff accordingly and timely motioned the administrative judge to amend his complaint to include the act of lowering his evaluation and the act of a denied bonus.  Exhibit 4P.  The agency opposed the motion (Exhibit 5P) and the administrative judge denied the Plaintiff's motion.  Exhibit 6P.

It is the Plaintiff's position that the issues in the Motion to Amend are "like or related to those raised in his original complaint." Both the original complaint and the Motion to Amend claim retaliation/harassment. This meets the criteria of "like or related." Retaliation is retaliation. Each act of reprisal does not have to be identical to each other. Then there is the fact that the same official is involved in committing the retaliation/harassment. This can only strengthen the similarity of the claim. Furthermore, the evaluation was lowered on September 30, 2002 (the Plaintiff did not receive it until November 2002). The record has already established that 7 days earlier Ms. Mitchell made her response on the Grievance Examiner's report. Ms. Mitchell's 314 day delay in making the response is a material fact in the original complaint. Therefore, the timing of the lowering of the evaluation clearly places it within days as just another act of retaliation related to the original complaint. Finally, the Plaintiff was in the same position as Territory Manager as he was in the original complaint. There has been no change in his status, position, duties or location within the IRS.

* * *

In conclusion, the lowered evaluation and denied bonus should have been allowed because the Plaintiff timely motioned the administrative judge to amend his complaint under *29 C.F.R. 1614.106(d)*.

(Id. at 23-25).

Defendant's Reply on this issue states:

When Plaintiff filed his motion [to amend his EEO complaint] on January 3, 2003, the investigation had been complete for five months and summary judgment motions were pending before the AJ. See Gilliom Declaration (Attachment E), attached to Motion as Ex. 1; Response Brief Ex. 5P, p. 2. In the motion, Plaintiff requested additional discovery, i.e., he admitted that further investigation was necessary to develop his retaliation claim as it related to his 2002 evaluation. Response Brief, Ex. 4P.

In the Response Brief, Plaintiff argues the propriety of the AJ's denial of his motion to amend. However, the proper frame of reference is Fourth Circuit

12

> case law regarding the scope of Plaintiff's right to
> institute a civil suit.  As discussed above and in
> Defendant's opening brief, the scope of the civil action
> is limited by the EEO charge and the scope of the
> administrative action that can reasonably be expected to
> follow the charge of discrimination.
>
>                          \* \* \*
>
> In making the motion [to amend], Plaintiff requested
> additional discovery for "new issues."  In other words,
> he needed a second investigation, at the eleventh hour,
> because the scope of the initial investigation, regarding
> the processing of his grievances, could not reasonably
> have been expected to include an inquiry into Plaintiff's
> performance evaluations and level of compensation.

(# 21 at 8-10).

Although Plaintiff attempted to revise his charge after he received his 2002 performance evaluation and was denied a bonus, the EEOC had already concluded its investigation and the Administrative Judge denied his request to amend his complaint. Thus, these four issues are not exhausted, and the District Court lacks jurisdiction to consider those claims.  Davis, 48 F.3d at 137-138 (before federal court may assume jurisdiction over a claim under Title VII, claimant must exhaust administrative procedures). It is not for this court to determine the propriety of the Administrative Judge's ruling on the motion to amend.

The undersigned proposes that the presiding District Judge **FIND** that these claims as stated in Plaintiff's Amended Complaint are unexhausted and, thus, the District Court lacks jurisdiction over them.  Accordingly, it is respectfully **RECOMMENDED** that the

13

presiding District Judge **GRANT** Defendant's Motion to Dismiss (# 14-1) and dismiss the claims of retaliation as stated in paragraphs 19 through 22 of Plaintiff's Amended Complaint, and any other allegations contained therein that relate to these particular claims, for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**B. Plaintiff's remaining claims.**

Plaintiff's claim of retaliation based upon the delay in processing his grievances and his claim concerning a hostile work environment remain. The court will first address the general relation claim and will then turn to the allegations of a hostile work environment.

**1. Retaliation claim.**

To establish a prima facie case of retaliation under Title VII, Plaintiff must show: (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there is a sufficient causal connection existed between the first two elements. See Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996). It is clear from the pleadings that Plaintiff has engaged in protected activity. Thus, he can satisfy the first prong.

The next inquiry is whether Plaintiff suffered an "adverse employment action." An adverse employment action generally involves "ultimate employment decisions such as hiring, granting

14

leave, discharging, promoting, and compensating." <u>See</u> <u>Page v.</u>
<u>Bolger</u>, 645 F.2d 227, 233 (4th Cir. 1981).  However, under 42
U.S.C. § 2000e-3, which applies to retaliation claims such as those
raised here, "conduct short of 'ultimate employment decisions' can
constitute adverse employment actions."  <u>Von Gunten v. Maryland</u>,
243 F.3d 858 (4th Cir. 2001).

Some courts have held that "an employment decision does not
rise to the level of an actionable adverse action, however, unless
there is a 'tangible change in the duties or working conditions
constituting a material employment disadvantage.'"  <u>Walker v.</u>
<u>Washington Metro. Area Transit Auth.</u>, 102 F. Supp.2d 24, 29 (D.D.C.
2000).  The Supreme Court has specifically held that "a tangible
employment action constitutes a significant change in employment
status, such as hiring, firing, failing to promote, reassignment
with significantly different responsibilities, or a decision
causing a significant change in benefits." <u>Burlington Indus. Inc.</u>
<u>v. Ellerth</u>, 524 U.S. 742, 761 (1998).

Defendant asserts that:

the Complaint is devoid of any allegations that Plaintiff
suffered adverse effects in the terms, conditions or
benefits of his employment as a result of Defendant's
failure to process Plaintiff's grievances in a timely
manner.  Viewing the allegations in the Complaint in the
light most favorable to Plaintiff, Defendant's failure to
process the grievances in accordance with agency
timelines cannot be construed as anything other than a
"trivial discomfort [] endemic to employment."
Accordingly, Plaintiff cannot establish that he suffered
an adverse employment action, an essential element of his

_prima_ _facie_ case, and the Complaint must be dismissed.

(# 15 at 11).

Plaintiff's Response asserts that "the issue is whether deliberate violations of organizational policy/procedures constitutes either an 'ultimate employment decision' as reasoned in Page v. Bolger, 645 F.2d [227] (4th Cir. 1981), and/or a violation of the Plaintiff's 'terms, conditions or benefits' of employment [as stated in Von Gunten]." Plaintiff further contends that the agency grievance procedure "is a benefit of employment that allows employees to redress perceived wrong doing" and that "[a]ny actions that adversely affect 'terms, conditions, or benefits' of employment qualify as an adverse action.'" (citing Von Gunten, 243 F.3d 858). (# 20 at 28).

Plaintiff's Response further states that "Ms. Mitchell openly admitted that the grievances were on 'hold.' She stated: ' . . . the grievances were on hold while we tried to settle the EEO complaint.'" (# 20 at 10). Plaintiff further contends that:

> A strategy such as this would clearly discourage employees from exercising their rights under Title VII if they believe that management is capable of violating its own procedures to exert pressure and distress on employees who file EEO complaints. Simply put, if the Plaintiff had never filed the EEO complaints and subsequent lawsuit there would never have been a delay in the processing of the grievances. Therefore, under this theory, the resolution of the Grievances were being held hostage as a means to exert pressure and distress on the Plaintiff in order to force a more favorable EEO settlement for the IRS.

16

(<u>Id.</u> at 11).

Defendant's Reply states:

> Assuming, <u>arquendo</u>, that such violations are true and constitute "deliberate violations of organizational policy/procedures," Plaintiff still has failed to establish an adverse employment action. Simply put, the above-listed "deliberate violations of organizational policy/procedures" do not approach the level of an ultimate employment decision, <u>e.g.</u>, hiring, granting leave, discharging, promoting, and compensating.

(# 21 at 4). Defendant further contends that:

> Plaintiff has failed to explain how the claimed "deliberate violations of organizational policy/procedures' affected the terms, conditions or benefits of his employment. Rather, Plaintiff merely states: (1) that Defendant "placed him in a disadvantaged employee status;" (2) that "[h]is 'terms, conditions and benefits' were materially altered; and (3) "he was no longer entitled to rights of employment as where other employees were." However, it is not enough for Plaintiff to claim generally that his terms, conditions or benefits of employment were materially altered. Instead, Plaintiff must point to evidence identifying the terms, conditions or benefits of employment and describe the manner and extent in which they were altered.

(<u>Id.</u> at 5).

The Second Circuit has held that "[b]ecause there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" <u>Wanamaker v. Columbian Rope Co.</u>, 108 F.3d 462, 466 (2d. Cir. 1997). At least one court has held that a defendant's delay in acting upon a plaintiff's grievances in a timely manner can at least, in part, constitute an adverse employment action

17

sufficient to establish the second prong of the <u>prima</u> <u>facie</u> case of retaliation.  <u>See</u> <u>Phipps v. New York State Dep't of Labor</u>, 53 F. Supp.2d 551, 563 (N.D.N.Y. 1999).  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that, for purposes of this motion to dismiss, Plaintiff has shown an adverse employment action.

Although not addressed in Defendant's motion, in order to make a <u>prima</u> <u>facie</u> case of retaliation, Plaintiff is also required to show a nexus between his protected activity and the alleged adverse employment action.  However, Plaintiff need only show that the protected activity and the adverse action are not completely unrelated.  <u>See</u>, *e.g.*, <u>Daniel v. Church's Chicken</u>, 942 F. Supp. 533 (S.D. Ala. 1996).  Furthermore, the causal connection can be indirectly shown by proximity in time.  <u>Tinsley v. First Union Nat'l Bank</u>, 155 F.3d 435, 443 (4th Cir. 1998).

Plaintiff has a noted history of involvement with EEO proceedings.  According to the Amended Complaint, Plaintiff filed a Title VII discrimination and retaliation complaint in the United States District Court for the Southern District of Indiana on May 26, 2000, which was based upon prior EEO activity in which he had participated.  That action was brought against his black former supervisors.  Plaintiff then filed his five grievances during the period of April 6, 2000 to October 22, 2000, and initiated his new EEOC proceedings by July of 2001.  Plaintiff's then-supervisor,

18

Renee Mitchell, has admitted that she became aware of Plaintiff's EEO activity by December of 2000.  Thus, Plaintiff's initiation of the grievance procedures and the delay in ruling on his grievances were proximate in time to his EEO activity, of which his supervisor was aware.

Taking the facts in the light most favorable to Plaintiff, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has satisfied the de minimus requirement of showing a causal connection between his EEO activity and Defendant's delay in resolving Plaintiff's grievances.

The undersigned further proposes that the presiding District Judge **FIND** that Plaintiff has made a prima facie case of retaliation under Title VII, and it does not appear that Plaintiff "could prove no set of facts in support of his claim which would entitle him to relief."  Brock & Davis Co. v. Charleston Nat'l Bank, 443 F. Supp. 1175 (S.D. W. Va. 1977)(emphasis added).  Thus, Plaintiff should be allowed the opportunity to offer evidence in support of his retaliation claim.  Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's Motion to Dismiss (# 14-1) with regard to Plaintiff's retaliation claim.

### 2.  Plaintiff's hostile work environment claim.

As stated by Plaintiff in his Response (# 20 at 34), "the

19

Supreme Court has held that a hostile work environment is one in which the workplace is permeated with 'discriminatory intimidation, ridicule and insult' so severe or pervasive 'that it alters the conditions of the victim's employment and creates an abusive working environment.'"  <u>Meritor v. Vinson</u>, 477 U.S. 57, 65-67 (1986).  In <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993), the Supreme Court established a two-prong test to determine whether a Plaintiff can state a hostile work environment claim.

First, Plaintiff must establish that the complained of conduct created "an environment that a reasonable person would find hostile or abusive."  Second, the plaintiff must "subjectively perceive the environment to be abusive" and show that the conduct "actually altered the conditions of the victim's employment."  <u>Id.</u> at 21. Additionally, the Supreme Court has ruled that the conduct at issue "must be extreme to amount to a change in the terms and conditions of employment."  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998).  The Fourth Circuit has set forth a number of factors to consider when determining the severity or pervasiveness of alleged harassment.  Those factors are:

> (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes [with] the employee's work performance.

<u>Smith v. First Union Nat. Bank</u>, 202 F.3d 234, 242 (4th Cir. 2000);

20

<u>Finnegan v. Dept. of Public Safety & Correctional Serv.</u>, 184 F.
Supp.2d 457, 462 (D. Md. 2002).

> Defendant's motion asserts that:

> the Complaint contains absolutely no allegations that
> Defendant treated Plaintiff in a hostile and abusive
> manner.  More particularly, Plaintiff has failed to
> allege that Defendant subjected him to any severe
> conduct; to any physically threatening or humiliating
> conduct; or that Defendant's conduct in resolving his
> grievances interfered with [his] work performance.  Thus,
> Plaintiff cannot establish a claim of hostile environment
> discrimination, and the Complaint must be dismissed.

(# 15 at 14).

Plaintiff's Response contends that he "views the term
'discrimination' to include race, sex and hostile environment . .
. ." (# 20 at 34).  Thus, Plaintiff contends that he did raise a
hostile work environment claim in his Amended Complaint when he
referred to "discrimination."  Citing <u>Oncale v. Sundowner Offshore
Services, Inc.</u>, 523 U.S. 75 (1998), Plaintiff further contends that
"the objective severity of the harassment should be judged from the
perspective of a reasonable person in the plaintiff's position,
considering 'all the circumstances.'" (# 20 at 35).

Plaintiff contends that he "has produced overwhelming evidence
that far exceeds unfulfilled threats, 'discriminatory intimidation,
ridicule and insult.'" (<u>Id.</u> at 36).  Plaintiff further contends
that:

> Every procedure in the agency grievance process was

21

violated without any explanation.  The Agency delayed the
grievance process for almost two years.  It failed to
follow every single time frame for each step of the
process.  It failed to follow written procedures in
establishing the correct AMO (first step) and Deciding
Official (second step).  It failed to respond to the
Plaintiff's many pleas for assistance.  It failed to
cooperate with the Grievance Examiner . . . . They denied
the Plaintiff a hearing at the AMO level . . . The Agency
also violated procedures when they pursued a "global"
settlement.  They cannot cite any standing practice, or
rule that would permit a grievance to be held in abeyance
while the agency pursued an EEO settlement on a
completely different matter.[1]


These actions taken against Plaintiff were frequent,
deliberate, and ongoing and have clearly met the "severe
or pervasive" standard.  Adverse actions of this nature
would certainly discourage employees from filing an EEO
complaint.

(Id. at 36).

Defendant's Reply states in pertinent part:

[Plaintiff] has not identified any extreme conduct on
Defendant's part or a single instance of discriminatory
intimidation, ridicule or insult.  It is plain from a
subjective standpoint, Plaintiff feels he has been
subjected to severe or pervasive harassing conduct.
However, the conduct he attributes to Defendant,
violation of agency grievance procedures, simply does not
rise to the extreme level required by the applicable case
law, and therefore, Plaintiff cannot satisfy the
objective element of the test.  Accordingly, Defendant is
entitled to judgment as a matter of law[2] on Plaintiff's

---

[1]   The undersigned notes that this paragraph contains
additional information concerning Plaintiff's unexhausted claims,
but the undersigned has not quoted those statements, as it has been
recommended that those claims be dismissed.

[2]   In two places in this section of Defendant's Reply,
Defendant's counsel states that Defendant is entitled to judgment

claim of hostile work environment discrimination.
(# 21 at 7).

A review of the major Supreme Court cases concerning hostile work environment claims indicates that the allegedly harassing conduct engaged in by Defendant against Plaintiff is not the kind of conduct that was contemplated to be actionable under Title VII. In Meritor, the case in which the Court found that a hostile work environment claim could be actionable under Title VII, a female employee claimed that she was fondled by her supervisor in front of other employees, that the supervisor made repeated demands for sexual favors, that he exposed himself to her, and even forcibly raped her.  477 U.S. at 60.  In Harris, in which the court found no hostile work environment, the plaintiff was insulted by a supervisor based upon her gender and was the target of unwanted sexual innuendos.  510 U.S. at 19.  In Oncale, the male plaintiff was subjected to "sex-related humiliating actions," physically assaulted in a sexual manner, and threatened with rape by other male employees.  523 U.S. at 77.

Plaintiff has not alleged that any of Defendant's agents

---

as a matter of law.  As previously stated herein, the undersigned finds that, at this stage of the proceedings, the issues addressed in Defendant's motion are more appropriately resolved in a motion to dismiss, and that a motion for summary judgment is premature. Thus, the undersigned will address this claim under the standards for a motion to dismiss for failure to state a claim.

physically threatened Plaintiff, were verbally abusive toward Plaintiff, or in any way unreasonably interfered with his work performance.   Moreover, the undersigned agrees that, while Plaintiff's subjective view is that he has been subjected to severe or pervasive harassing conduct, even the repetitive violation of agency grievance procedures simply does not rise to the extreme level of harassment required by the applicable case law, and therefore, Plaintiff cannot satisfy the objective element of the test.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim of hostile work environment under Title VII.   Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss (# 14-1) as to Plaintiff's hostile work environment claim.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(a), Federal Rules of Civil Procedure, the parties shall have three days (mailing) and ten days (filing of objections) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying

24

the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

<u>    August 17, 2005    </u>                  <u>Mary E. Stanley</u>
         Date                          Mary E. Stanley
                                       United States Magistrate Judge