UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


JAMES B. TWISDALE,

          Plaintiff,


v.                                    CIVIL ACTION NO. 2:04-0986


HENRY M. PAULSON, JR.
Secretary of the United States,
Department of Treasury,

          Defendant.


MEMORANDUM OPINION AND ORDER


        This matter is before the court on the proposed

findings and recommendation of the United States Magistrate

Judge, filed on August 27, 2007, to which the defendant filed

objections on September 17, 2007.  Defendant objects to the

magistrate judge's recommendation that the court deny the

defendant's motion for summary judgment as to the sole remaining

claim, being that of retaliation based on defendant's delay in

processing plaintiff's grievances.[1]

_____

        [1] On August 2, 2006, the court adopted the magistrate
judge's first proposed findings and recommendation regarding the
defendant's motion to dismiss "except to the extent that the
magistrate judge found it necessary that plaintiff describe an
adverse employment action."  In doing so, some of the plaintiff's
retaliation claims and his hostile work environment claim were

The proposed findings of the magistrate judge set forth in detail the relevant facts of this case.  Defendant raised no objection with respect to her recitation of the facts.

I.

Rule 72(b) of the Federal Rules of Civil Procedure provides in part that, once a magistrate judge has "heard a pretrial matter dispositive of a claim or defense of a party" and made a recommendation for the disposition of the matter,

> [t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b).  Under this rule, the court is to consider de novo any portion of the magistrate judge's recommendation to which specific written objection has been made.  See Fed. R. Civ. P. 72(b), Advisory Committee Notes (explaining that the district

---

dismissed.  Only the retaliation claim concerning the delay in resolving plaintiff's grievances was allowed to proceed.

2

judge to whom the case is assigned is to make a <u>de</u> <u>novo</u> determination "of those portions of the report, findings, or recommendations to which timely objection is made"; where no timely objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record").

II.

On September 10, 2004 plaintiff, James B. Twisdale, filed this action alleging that his employer, the Internal Revenue Service ("IRS"), retaliated against him in violation of Title VII of the Civil Rights Act of 1964.  In 1997, plaintiff, who is a white male, was employed as the chief of the IRS's Quality Measurement Branch in Indianapolis, Indiana.  In that capacity, plaintiff was involved in the investigation of an Equal Employment Opportunity ("EEO") complaint filed by Barry Madison ("Madison"), a black female.  Plaintiff was skeptical of Madison's claim and issued a reprimand to Madison for her commission of an ethical violation.  Subsequently, Madison filed a discrimination claim against the plaintiff with the IRS' Equal Employment Office.

Plaintiff then filed four EEO complaints of his own, alleging that black supervisors in Indiana retaliated against him in response to his opposition to Madison's discrimination claim.

On May 26, 2000, plaintiff filed a lawsuit alleging these retaliation claims in the United States District Court for the Southern District of Indiana.  The district court granted summary judgment in favor of the IRS, and plaintiff's appeal failed. (Twisdale v. Snow, 325 F.3d 950 (7th Cir. 2003), Def.'s Mot. to Dis., ex. 2).  The claims dealt with in that action are not in issue here.

Between April 6, 2000 and October 22, 2000 plaintiff filed five agency grievances alleging retaliation based on his prior EEO activity.  (Def.'s Mot. Summ. J., ex. 1).  On October 1, 2000, plaintiff began to work as the IRS' Territory Manager for Compliance Area 6 of the Small Businesses/Self-employment Division, which is based in West Virginia.  The IRS' processing of the five grievances lodged by the plaintiff in 2000 is at the heart of the instant dispute.  Plaintiff claims that the IRS retaliated against him for engaging in the EEO process by deliberately delaying processing of the five grievances. Specifically, plaintiff contends that his immediate supervisor at the IRS, Renee Mitchell ("Mitchell"), retaliated against him by delaying a decision on his grievances for a period in excess of a year and a half, in violation of IRS policy.[2]

---

[2] Plaintiff's amended complaint alleges that Mitchell caused a delay of 597 days.  The court notes that Mitchell received plaintiff's grievance file on December 5, 2000 and issued her final decision on September 23, 2002.  Regardless of the exact length of the delay, it was substantially longer than the time

**4**

Plaintiff's claim arises under Title VII of the Civil Rights Act of 1964.  This court possesses jurisdiction pursuant to 28 U.S.C. § 1331.  The parties do not contest jurisdiction.

Defendant's objections to the magistrate judge's denial of its motion for summary judgment are twofold.  First, defendant contends that the magistrate judge erred in applying the holding in Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2414-15 (2006), to federal employees.  (Obj. to 2nd PF&R at 3-6).  Second, defendant argues that the magistrate judge erred in finding that plaintiff established the "material harm" element of his prima facie case of retaliation.  (Id. at 6-12).

A.  Application of Burlington Northern to Federal Employees

In Burlington Northern the Supreme Court held that Title VII's anti-retaliation provision for private-sector

---

frame mandated by IRS policy.  Upon receipt of plaintiff's grievance file, Mitchell was required to issue a decision within 15 days.  (Internal Revenue Manual 0771.1, Grievance Handbook § 133, Investigative File at 117).  While Mitchell received plaintiff's grievance file on December 5, 2000, a decision was not issued until August 23, 2001, 261 days later, by another IRS employee in Mitchell's absence.  Following review by yet another IRS employee, Mitchell received plaintiff's grievance examiner report on November 12, 2001, to which she was required to respond within 10 days.  (Id.)  Mitchell did not issue a decision until September 23, 2002, 315 days later.

5

employees, 42 U.S.C. § 2000e-3(a), is not bound by the same limits as Title VII's anti-discrimination provision for such employees, 42 U.S.C. § 2000e-2(a). Rather, the anti-retaliation provision for private-sector employees "extends beyond workplace-related or employment-related retaliatory acts and harm." Burlington Northern, 126 S. Ct. at 2414. As a result of the decision in Burlington Northern, it is unnecessary for a private-sector plaintiff to assert an "adverse employment action" to support a claim for retaliation. Id. Instead, to prove actionable retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" Id. at 2415 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

While Burlington Northern involved a retaliation claim against a private employer brought under 42 U.S.C. § 2000e-3(a),[3]

---

[3] The anti-retaliation provision of Title VII for private sector employees, 42 U.S.C. § 2000e-3(a), provides:

> It shall be an unlawful employment practice for an employer to discriminate against any one of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Twisdale's retaliation claim is brought pursuant to the statute protecting federal government employees at 42 U.S.C. § 2000e-16. A portion of the statute governing federal employees provides:

(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage

<u>All personnel actions</u> affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accountability Office, and the Library of Congress <u>shall be made free from any discrimination</u> based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-16(a) (emphasis added). Defendant acknowledges that although § 2000e-16(a) does not expressly authorize retaliation claims for federal employees, such claims are cognizable because § 2000e-16(d) incorporates § 2000e-5(f) through (k), including § 2000e-5(g)(2)(A).[4]  (Def. Memo. in Supp.

_____

[4]  When the issue has been uncontested or immaterial, our court of appeals has assumed federal employees may bring retaliation claims.  <u>See</u> <u>Baqir v. Principi</u>, 434 F.3d 733, 747 (4th Cir. 2006); <u>Laber v. Harvey</u>, 438 F.3d 404, 432 (4th Cir. 2006) (assuming <u>arguendo</u> that federal employees have right to bring retaliation claim when plaintiff's retaliation claim was resolved on other grounds).  Further, <u>Baqir</u> noted that other

7

of Mot. Summ. J. at 8).  Section 2000e-5(g)(2)(A) states:

> No order of the court shall require the admission or
> reinstatement of an individual as a member of a union,
> or the hiring, reinstatement, or promotion of an
> individual as an employee, or the payment to him of any
> back pay, if such individual was refused admission,
> suspended, or expelled, or was refused employment or
> advancement or was suspended or discharged for any
> reason other than discrimination on account of race,
> color, religion, sex, or national origin or <u>in
> violation of section 2000e-3(a) of this title</u>.

<u>Id.</u> § 2000e-5(g)(2)(A) (emphasis added).

        Defendant does not contest the proposition that federal
employees may bring a retaliation claim.  Rather, in asserting
that adverse employment action is an element of retaliation
claims brought by federal employees, defendant contends that
while § 2000e-5(g)(2)(A) authorizes courts to remedy acts of
retaliation against federal employees, there exists,

> an important limitation on the incorporation of §§
> 2000e-5(f) through (k): Section 2000e-16 specifies that
> these subsections govern "as applicable," in "civil
> actions brought hereunder"--that is, in civil actions
> brought under § 2000e-16.  By the express terms of §
> 2000e-16(a), civil actions under § 2000e-16 are limited
> to claims involving "personnel actions."

(Memo. in Supp. of Mot. Summ. J. at 8).  A waiver of sovereign
immunity "cannot be implied but must be unequivocally expressed."

---

circuits have affirmatively found that federal employees have the
option to bring such claims.  434 F.3d at 747 (citing <u>Porter v.
Adams</u>, 639 F.2d 273, 277-78 (5th Cir. 1981); <u>Ayon v. Sampson</u>, 547
F.2d 446, 449-50 (9th Cir. 1976)).

**Irwin v. Dep't of Veterans Affairs**, 498 U.S. 89, 95 (1990)

(quoting **U.S. v. Mitchell**, 445 U.S. 535 (1980)); **see also** **U.S. v.**

**Nordic Village, Inc.**, 503 U.S. 30, 33-34 (1992).  Thus, defendant

argues, **Burlington Northern** is inapplicable in the context of

federal government employment because, "the mere incorporation of

*remedies* for violations of § 2000e-3(a) would be insufficient to

expand the Government's sole waiver of sovereign immunity beyond

the clear limits set by § 2000e-16(a)."  (Memo. in Supp. Mot.

Summ. J. at 3).

          In addressing the sovereign immunity issue, the United

States Court of Appeals for the D.C. Circuit, prior to **Burlington**

**Northern**, analyzed the statutory framework and concluded that

federal government employees had the same rights in retaliation

cases as that of private-sector employees.  The court stated,

> [W]e must consider whether, when referenced in §
> 2000e-16(d) via § 2000e-5(g)(1)-(2)(A), the general ban
> on retaliation in § 2000e-3(a) is limited by the
> requirement in § 2000e-16(a) that "all [Government]
> personnel actions" be made free from discrimination.
> We do not believe the prohibition is so qualified.
> Nothing in § 2000e-16(d) or § 2000e-5(g) suggests §
> 2000e-3(a) is to be read differently when applied to
> the Government.

**Rochon**, 438 F.3d at 1219.  Following **Burlington Northern**,

published decisions of the First, Seventh, and District of

Columbia Courts of Appeal, and an unpublished decision of the

9

Eleventh Circuit, have all applied it to retaliation claims
brought by federal-government employees.  See DeCaire v. Mukasey,
530 F.3d 1, 19 (1st Cir. 2008) (applying Burlington Northern to
retaliation claim of deputy U.S. Marshal); Thomas v. Miami
Veterans Med. Ctr., 290 F. App'x 317, 320 (11th Cir. 2008)
(applying Burlington Northern to retaliation claim of employee of
Department of Veterans Affairs and stating, "[t]he Supreme Court
has held that in order to sustain a Title VII retaliation claim,
an employee must show that 'a reasonable employee would have
found the challenged action materially adverse.'"); Lapka v.
Chertoff, 517 F.3d 974, 985 (7th Cir. 2008) (applying Burlington
Northern to retaliation claim by employee of the Department of
Homeland Security); Novak v. Nicholson, 231 F.App'x 489, 495 (7th
Cir. 2007) (applying Burlington Northern to retaliation claim by
former employee of Department of Veterans Affairs);  Patterson v.
Johnson, 505 F.3d 1296, 1299 (D.C. Cir. 2007) (applying
Burlington Northern standard to claim by employee of the United
States Environmental Protection Agency); Webber v. Battista, 494
F.3d 179, 186 (D.C. Cir. 2007) (applying Burlington Northern to
retaliation claim by employee of the National Labor Relations
Board); Nair v. Nicholson, 464 F.3d 766, 768-69 (7th Cir. 2006)
(applying Burlington Northern to retaliation claim by employee of
Department of Veteran Affairs and stating, "[w]hile it is now

10

settled that retaliation to be actionable need not take the form
of adverse employment action . . . [t]he test is whether the
conduct alleged as retaliation would be likely to deter a
reasonable employee from complaining about discrimination."); De
Jesus v. Potter, 211 F.App'x 5, 11-12 (1st Cir. 2006)
(retaliation claim by employee of United States Postal Service
remanded in light of Burlington Northern which "chang[ed] the
legal standard to be applied  claims of retaliation brought under
Title VII.").  The court is in agreement with this authority.
"Personnel actions" in § 2000e-16(a) must be read to include §
2000e-3(a) as interpreted by Burlington Northern.[5]

_____

[5] It is worth noting that following Burlington Northern, the
Supreme Court has implicitly recognized that the case may apply
in the federal-employment context.  In Johnson v. Potter, No. 04-
CV-6634CJS, 2005 WL 2257436 (W.D.N.Y. Sept. 16, 2005) a former
employee of the United States Postal Service sued the Postmaster
General under Title VII alleging, among other things, unlawful
retaliation.  The district court granted the defendant's motion
for summary judgment, and plaintiff appealed.  On appeal, the
Second Circuit affirmed the district court's determination that
plaintiff had not stated a prima facie case of "adverse
employment action," which the court stated was "necessary to any
claim of retaliation under Title VII."  Johnson v. Potter, 184
F.App'x 138, 138 (2d Cir. 2006).  Plaintiff then petitioned for
rehearing en banc in light of Burlington Northern.  The petition
was denied and the plaintiff petitioned the Supreme Court for a
writ of certiorari contending that the court of appeals erred in
failing to give retroactive effect to Burlington Northern while
plaintiff's case was on direct review.  Petition for Writ of
Certiorari, Johnson v. Potter, 127 S. Ct. 3003 (2007) (No. 06-
1172).  Responding to the petition, the Postmaster General
argued, inter alia, that Burlington Northern "does not apply to
the federal government."  Brief for the Respondent in Opposition,

In a case not involving a federal employee, our court of appeals has previously stated in a footnote

> that inclusion of the term "personnel action" in § 2000e-16 indicated that "ultimate employment decisions" arose to "the general level of decision" targeted by Congress in that statute. . . . [Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981)]. See also Boone v. Goldin, 178 F.3d 253, 255-56 (4th Cir. 1999) (citing Page in another federal sector case). Of course, § 2000e-3 does not confine its reach to "personnel actions" and thus this reasoning simply does not apply to retaliation actions . . .

Von Gunten v. Maryland, 243 F.3d 858, 866 n. 3 (4th Cir. 2001), *superceded by* Burlington Northern, 126 S.Ct. at 2415. The latter sentence demonstrates that the Von Gunten footnote merely viewed § 2000e-16(a) in isolation and not in the context of the larger statutory framework, including § 2000e-16(d) and § 2000e-5(g), which incorporate § 2000e-3 into the remedies available for federal employees. It should be further observed that neither Von Gunten, Page, nor Boone involved federal employees' retaliation claims unrelated to the employment context.

The law of our circuit on this issue is presently unsettled inasmuch as the court of appeals has yet to squarely

---

Johnson v. Potter, 127 S. Ct. 3003 (2007) (No. 06-1172). The Supreme Court, however, granted the petition, vacated the judgment and remanded the case to the Second Circuit for further consideration in light of Burlington Northern. Johnson v. Potter, 127 S. Ct. 3003 (2007).

12

address the issue in a published decision.  The court has,
however, noted that "[n]otwithstanding the differences in
wording, sections 2000e-2 and 2000e-16 generally have been
treated as comparable, with the standards governing private-
sector claims applied to claims under section 2000e-16."  Bhella
v. England, 91 F.App'x 835, 844 (4th Cir. 2004).[6]

        In a recent unpublished opinion, our court of appeals
held that the Burlington Northern standard "applies to both
private employees and federal employees whose retaliation claims
arise under § 2000e-16(a)."  Caldwell v. Johnson, 289 F. App'x

_____

        [6] The House Report to § 2000e-16 states that "[t]he Federal
service is an area where equal employment opportunity is of
paramount significance."  H.R. REP. NO. 92-238 (1971), reprinted
in 1972 U.S.C.C.A.N. 2137, 2157.  In transferring "the civil
rights enforcement function [for federal employees] from the
Civil Service Commission to the Equal Employment Opportunity
Commission" id. at 2160 Congress sought to correct "entrenched
discrimination in the Federal service . . . [by] insur[ing] the
effective application of uniform, fair and strongly enforced
policies."  Id. at 2159.  To this end, Congress sought to afford
federal employees "adequate redress" through "court review, back
pay, promotions, reinstatement, and appropriate affirmative
relief" which was, prior to the adoption of § 2000e-16, only
available to private sector employees.  Id. at 2160.  Thus, it is
significant that § 2000e-3(a) is incorporated into § 2000e-16
through § 2000e-5, the statute's enforcement provision.  The
defendant has not offered any reason why Congress would seek to
eradicate discrimination in the federal service by providing
redress though the EEOC and yet arbitrarily limit the scope of
redressable harms.

13

579, 592 (4th Cir. 2008).[7]  Finding error in the district court's application of Von Gunten, a case applying the more restrictive pre-Burlington Northern "adverse employment action" standard to retaliation claims, the court in Caldwell reversed the lower court's grant of summary judgment in favor of the defendant on the plaintiff's retaliation claim brought pursuant to § 2000e-16(a).

The Caldwell court began its analysis by observing that before Burlington Northern "we read the retaliation component of the federal employee statute in harmony with the private retaliation standard without scrutinizing the differing language of the statutes."  Caldwell, 289 F. App'x at 588.  The "adverse employment action" standard deemed inapplicable to private employee retaliation claims by Burlington Northern finds its origin in § 2000e-2(a)(1).  See Von Gunten, 243 F.3d at 863 n.1. Thus, this court, like the Caldwell court, must "determine whether an extinct standard that originated from a different statute remains alive and well in the federal employee context."

_____

[7] Unpublished opinions are not binding precedent in the Fourth Circuit.  See Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996); 4th Cir. R. 36(c).  Nevertheless, the court finds the rationale offered by Caldwell to be well-considered.

14

*Caldwell*, 289 F. App'x at 589.[8]  While noting that § 2000e-16(a)

covers "*all* personnel action" and thus on its face covers a

"broader range of activity than the private anti-discrimination

statute [§ 2000e-2(a)]," the *Caldwell* court recognized that the

term "'personnel action[]' . . . adds an element that the private

anti-retaliation provision does not contain."  Id.  Responding to

---

[8]  Even if § 2000e-16(a) were read to somehow limit the
scope of § 2000e-3(a)'s anti-retaliation provision, as applied in
the federal-employment context, it is not at all clear why the
"adverse employment action" standard disavowed in Burlington
Northern should apply.  As noted in Caldwell, the genesis of the
"adverse employment action" standard is in § 2000e-2(a) which
makes it unlawful:

   (1) to fail or refuse to hire or to discharge any
   individual, or otherwise discriminate against any
   individual with respect to his compensation, terms,
   conditions, or privileges of employment, because of
   such individual's race, color, religion, sex, or
   national origin; or

   (2) to limit, segregate, or classify his employees or
   applicants for employment in any way which would
   deprive or tend to deprive any individual of employment
   opportunities or otherwise adversely effect his status
   as an employee, because of such individual's race,
   color, religion, sex or national origin.

§ 2000e-2(a).  The provision in question, § 2000e-16(a),
prohibits "discrimination based on race, color, religion, sex, or
national origin," in all "personnel actions affecting employees."
§ 2000e-16(a).  The overly strict statutory construction urged by
the defendant may not, and likely would not, lead to the
conclusion sought.  If one is to contrast the language of §
2000e-2(a) with § 2000e-16(a) in order to reach a differing
interpretation of § 2000e-3(a), it would seem a standard rooted
in the text of § 2000e-16(a) would be applicable; not one based
on the very provision the defendant attempts to distinguish.

15

the government's contention that this additional language evidences a Congressional intent to have two different standards, the court cited <u>Gomez-Perez v. Potter</u>, 128 S.Ct. 1931, 1940 (2008) for the proposition that "negative implications raised by disparate provisions are strongest in those instances in which the relevant statutory provisions were considered simultaneously when the language raising the implication was inserted." <u>Caldwell</u>, 289 F. App'x at 590 (internal quotation marks omitted). "Congress enacted § 2000e-3 in 1964, 78 Stat. 257, while it enacted § 2000e-16(a) in 1972, 86 Stat. 111." <u>Id.</u> Rejecting the parties' differing interpretations of the legislative history of § 2000e-16(a), the court turned to a review of Supreme Court precedent and the case law of other circuits. Reiterating that the standard for private and federal employee retaliation claims was the same prior to <u>Burlington Northern</u>, the court stated,

> On the one hand, applying the same standard to federal employees and private employees without regard to the statutory language of each provision runs afoul of the Supreme Court's acknowledgment in *White* [<u>Burlington Northern</u>] that language that differs in important respects may result in differing standards. On the other hand, it would be illogical for Congress to impose an additional element of proof on federal employees when it has provided identical remedies for federal and private employees who allege retaliation.

<u>Id.</u> at 590-91.

16

In <u>Burlington Northern</u> the Court emphasized the differing goals of the antidiscrimination and retaliation provisions:

> The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct.

<u>Burlington Northern</u>, 126 S. Ct. at 2412 (internal citation omitted).  The defendant's proffered construction of § 2000e-(3)(a), as applied through § 2000e-16(a), "would not deter the many forms that effective retaliation can take.  Hence, such a limited construction would fail to fully achieve the antiretaliation provision's 'primary purpose,' namely, 'maintaining unfettered access to statutory remedial mechanisms.'"  <u>Id.</u>  (quoting <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 346 (1997)).  There is simply no reason to believe Congress intended to limit the scope of the anti-retaliation provision as applied to federal employees and thereby inhibit its purpose of maintaining unfettered access to the remedial mechanism Congress itself provided.  Indeed, all published circuit court opinions

17

following **Burlington Northern** have applied the **Burlington Northern** standard to retaliation claims of federal employees. **See** collection of cases at pp. 9-11, **infra**.  Further, three unreported cases from this circuit have applied **Burlington Northern** to federal employee retaliation claims arising under § 2000e-16(a). **See** **Moore v. Leavitt**, 258 F.App'x 585, 586 (4th Cir. 2007) (assuming for purposes of appeal **Burlington Northern** applies to claims of federal employees); **Parsons v. Wynne**, 221 F.App'x 197, 198 (4th Cir. 2007) (same); **Brockman v. Snow**, 217 F.App'x 201, 206 (4th Cir. 2007) (without analysis, applying **Burlington Northern** to federal employee retaliation claim).

It is noteworthy that in support of its holding, the Supreme Court in **Burlington Northern** cited to **Rochon**, 438 F.3d 1211, a case applying the "materially adverse" standard to a federal employee's retaliation claim.  **Burlington Northern**, 126 S. Ct. at 2412.  In **Rochon**, the D.C. Circuit found that "[n]othing in § 2000e-16(d) or § 2000e-5(g) suggests § 2000e-3(a) is to be read differently when applied to the Government." **Rochon**, 438 F.3d at 1219.  Concluding that retaliation need not occur in the employment context for federal employees to state a cognizable claim, **Rochon** states:

> Nor did the Supreme Court in any way qualify its
> observation in **Morton v. Mancari**, 417 U.S. 535, 547, 94

S.Ct. 2474, 41 L.Ed.2d 290 (1974), that "the
substantive anti-discrimination law embraced in Title
VII was carried over and applied to the Federal
Government" through the addition of § 2000e-16 in 1972.
See also Dothard v. Rawlinson, 433 U.S. 321, 331 n. 14,
97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) (noting "Congress
expressly indicated the intent that the same Title VII
principles be applied to governmental and private
employers alike" (citing H.R. Rep. No. 92-238, at 17
(1971); S. Rep. No. 92-415, at 10 (1971))).  In light
of the Congress's recognized intent in 1972 to apply to
the Government the principles it had in 1964 applied to
private employers, we now hold that an alleged act of
retaliation by the Government need not be related to
the plaintiff's employment in order to state a claim of
discrimination under Title VII.

Rochon, 438 F.3d at 1219; accord Loeffler v. Frank, 486 U.S. 549,

558-559 (1988) (With the 1972 amendment, "Congress intended to

provide federal employees with '"the full rights available in the

courts as are granted to individuals in the private sector under

Title VII."'"); Pueschel v. U.S., 369 F.3d 345, 352-353 (4th Cir.

2004) ("Believing that such a system failed to provide federal

employees sufficient protection against employment

discrimination, Congress amended Title VII by passing the Equal

Employment Opportunity Act of 1972 ("EEOA").  See 42 U.S.C. §

2000e-16.  The EEOA expressly subjects federal agencies to Title

VII's prohibitions . . . ."); Ayon v. Sampson, 547 F.2d 446, 450

(9th Cir. 1976) (Regarding the proposed enactment of § 2000e-16,

"'there can exist no justification for anything but a vigorous

effort to accord Federal employees the same rights and impartial

treatment which the law seeks to afford employees in the private sector.'") (quoting H.R. REP. No. 92-238 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2158).

The rationale in <u>Burlington Northern</u> for allowing a cognizable retaliation claim for occurrences beyond adverse employment actions was twofold. <u>Burlington Northern</u>, 126 S.Ct. at 2412-13. The Court found both the language differences between § 2000e-2(a) and § 2000e-3(a) and the purpose behind the anti-retaliation provision to be significant. <u>Id.</u>

The Court explained, "purpose reinforces what language already indicates, namely, that the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." <u>Burlington Northern</u>, 126 S.Ct. at 2412-13. Having different requirements for anti-discrimination and anti-retaliation provisions was determined to be necessary inasmuch as

> one cannot secure the second objective [of deterring retaliation] by focusing only upon employer actions and harm that concern employment and the workplace. Were all such actions and harms eliminated, the antiretaliation provision's objective would *not* be achieved. An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace.

<u>Id.</u> at 2412. There is nothing in <u>Burlington Northern</u> limiting

20

its rationale from applying here.

Burlington Northern cites Rochon for the proposition
that retaliation can be just as effective outside of the
employment context as in it.  Id. (providing the following
parenthetical explanation of Rochon: "Federal Bureau of
Investigation retaliation against employee 'took the form of the
FBI's refusal, contrary to public policy, to investigate death
threats a federal prisoner made against [the agent] and his
wife.'").  While not commenting on the analysis in Rochon,
Burlington Northern did state that "Title VII depends for its
enforcement upon the cooperation of employees who are willing to
file complaints and act as witnesses."  Id. at 67.  Just as
retaliation can be equally effective outside the employment
context as in it, retaliation is equally pernicious in the
private-sector context as the federal-employment context.  While
a waiver of sovereign immunity cannot be implied but must be
unequivocally expressed, courts "must be careful not to 'assume
the authority to narrow the waiver that Congress intended,' or
construe the waiver 'unduly restrictively.'"  Irwin, 498 U.S. at
94 (quoting Bowen v. City of New York, 476 U.S. 467, 479 (1986).

In Irwin, a federal employee filed a complaint stating
claims under Title VII against the Veterans Administration

21

outside the time period for commencing an action provided by §
2000e-16(c).  The court of appeals concluded that because waivers
of sovereign immunity are to be narrowly construed, the doctrine
of equitable tolling applicable in the non-federal employment
context did not apply to § 2000e-16(c).  Rejecting that
conclusion, the Supreme Court stated:

> Once Congress has made such a waiver, we think that
> making the rule of equitable tolling applicable to
> suits against the Government, in the same way that it
> is applicable to private suits, amounts to little, if
> any, broadening of the congressional waiver. Such a
> principle is likely to be a realistic assessment of
> legislative intent as well as a practically useful
> principle of interpretation. We therefore hold that the
> same rebuttable presumption of equitable tolling
> applicable to suits against private defendants should
> also apply to suits against the United States.
> Congress, of course, may provide otherwise if it wishes
> to do so.

Id. at 95-96.  In the case at hand, it is undisputed that the
United States waived its sovereign immunity and subjected itself
to retaliation claims under § 2000e-3(a).  Given Congress' clear
intent to afford federal employees the protections of Title VII,
there is no reason to conclude that § 2000e-3(a) has any less
broad of a scope when applied in the federal-employment context
through § 2000e-16(a).

        The use of "personnel actions" in § 2000e-16(a) must be
read in the context of the entire statutory framework which

incorporates the general anti-retaliation provision in § 2000e-3(a), and Burlington Northern has held that § 2000e-3(a) encompasses conduct outside of the employment context. Burlington Northern, 126 S.Ct. at 2412-14; see also Rochon, 438 F.3d at 1219. The Supreme Court and our court of appeals have repeatedly stated that the 1972 amendment to Title VII was meant to afford federal government employees the same rights as private-sector employees. See supra at p. 18-19. Burlington Northern invokes the policy of deterring retaliation as a reason for allowing claims for adverse actions outside of the employment context. 126 S.Ct. at 2412-13. In furtherance of its intent to "accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector," H.R. REP. No. 92-238 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2158, Congress saw fit to waive the federal government's sovereign immunity and afford federal employees a right of redress under § 2000e-3(a). To say that the scope of redressable retaliation is narrower in the federal-employment context than in the private sector would be to disregard Congress' manifest intent.

    Accordingly, the court concludes that in waiving its sovereign immunity for claims of retaliation pursuant to § 2000e-

23

3(a), as incorporated into § 2000e-16(a) through § 2000e-16(d) and § 2000e-5(g)(2)(A), Congress intended to, and did, subject the federal government to the same standard as private-sector employers.  The court further finds that the holding in Burlington Northern that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," applies with equal force in the federal-employment context.  Burlington Northern, 548 U.S. at 68 (quotation marks omitted) (citing Rochon, 438 F.3d at 1219).


B.  Delay in Processing Grievances Constitutes Material Harm


        Defendant's objections acknowledge there is no question that the alleged discriminatory act -- the delay in processing the grievances -- was related to plaintiff's employment. Instead, defendant contends the discussion in Burlington Northern of what degree of harm is necessary to maintain an actionable claim bars the claim.  (Obj. to 2nd PF&R at 8).  "Defendant acknowledges that delayed grievance processing may, in certain circumstances, support a claim of retaliation."  (Id. at 9, citing Reply to Resp. to Mot. Summ. J. at 5).  The defendant,

24

however, argues that plaintiff cannot carry his burden of showing the necessary level of harm in this case.  (<u>Id.</u> at 7).

Actionable retaliation must rise to the level of "material harm." <u>Burlington Northern</u>, 126 S.Ct. at 2415.  This standard is meant to "separate significant from trivial harms." <u>Id.</u>  In order to satisfy the requisite standard, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in the context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'"  <u>Id.</u> (quoting <u>Rochon</u>, 438 F.3d at 1219).  In <u>Burlington Northern</u>, the Court found that reassignment to a less desirable job and a period of suspension without pay to be material.[9]  <u>Id.</u> at 2416.

_____

[9]  Subsequent to <u>Burlington Northern</u>, three unpublished decisions by our court of appeals (two of which were per curiam opinions) assessed the harm necessary to sustain a retaliation claim.  <u>Brockman</u>, 217 F.App'x 201 (defendant's failure to respond to pregnant plaintiff's phone calls, assignment of difficult work to her, and assignment of duties which required her to walk did not approach materiality; however, the denial of plaintiff's request to work from home might be material and was assumed so); <u>Parsons</u>, 221 F.App'x at 198 (4th Cir. 2007) (per curiam) (quoting <u>Burlington Northern</u> and stating "Neither her May 2002 performance evaluation nor her removal from the alternate work schedule would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"); <u>Csicsmann v. Sallada</u>, 211 F.App'x 163, 168 (4th Cir. 2006) (per curiam) (material harm showing "is still a heavy burden for the plaintiff" and no material harm existed when plaintiff was reassigned upon returning from leave to a position less prestigious and with different

The requisite material harm was intentionally phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." Id. at 2415. Defendant points out that, in this context, rather than dissuading him from engaging in protected activity, the delayed processing propelled plaintiff to file another EEO complaint on July 24, 2001. (Obj. to 2nd PF&R at 9).

This fact does not cause plaintiff's claim to fail. The standard articulated in Burlington Northern is objective, not subjective. Id. at 2415. Furthermore, there was a substantial delay following the filing of the EEO complaint on July 24, 2001. It was not until September 23, 2002, that the grievance process was completed. (2nd PF&R at 15). Indeed, the harm was just as great after the filing of the EEO complaint on July 24, 2001, as before that date.

The magistrate judge summarized the harm as follows:

> The fact remains that it took almost two years for the resolution of Plaintiff's grievances. Ms. Mitchell had to be ordered to respond to both the grievances

---

responsibilities but in which the salary, job title, bonus eligibility, health care, and retirement benefits remained the same).

26

> themselves and the grievance examiner's report.
> Whether Ms. Mitchell's comments about another
> management employee filing an EEO complaint indicate a
> discriminatory animus, and whether the reasons for the
> delays offered by the Defendant are a pretext, are
> questions appropriately decided by a jury.

(2nd PF&R at 45).  Defendant has acknowledged the significant

delay in the processing of the grievances.  (Obj. to 2nd PF&R at

2).  There were several violations of the time periods set forth

in the five steps of grievance procedure in the employee

handbook, and the entire grievance procedure took significantly

and inexcusably longer than the handbook's promise that

"[w]henever possible the decision on the grievance should be made

within 170 days from the date of the grievance."  (2nd PF&R at 9,

15, 45).


        As the court stated in its earlier order,

> [p]laintiff's contentions would appear to describe
> actions of delay by his employer that a reasonable
> person would find "materially adverse".  An employer's
> purposeful allowance of the languishing, over an
> unusually extended period of time, of an employee's
> grievance may likely be an exploitation of the
> exhaustion requirement that effectively renders the
> employee's administrative remedy unavailable, thereby
> producing significant injury or harm.

(08-02-06 Order at 9).  Although the court's statement was made

in the context of a motion to dismiss and assumed all of

plaintiff's allegations as true, plaintiff has made the necessary

showing of a considerable delay in the grievance procedure and

27

defendant is not contesting that the delay occurred as claimed. (Obj. to 2nd PF&R at 2).  No development has occurred that would change the court's stance in its previous order that the alleged delay in this case may constitute material harm.  The Proposed Findings and Recommendation of the magistrate judge are adopted.

IV.

For the foregoing reasons, it is ORDERED that the defendant's motion for summary judgment be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record, the pro se plaintiff, and the United States magistrate judge.

DATED: January 23, 2009

John T. Copenhaver, Jr.
United States District Judge

28